## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TAMMY LYNN VEVERKA,                )
                                   )
            Plaintiff,             )          2:22-cv-1190
                                   )
      v.                           )
                                   )          Judge Marilyn J. Horan
HUMAN SERVICES CENTER,             )
                                   )
            Defendant.             )

### MEMORANDUM OPINION

Plaintiff, Tammy Lynn Veverka, filed suit against Defendant, Human Services Center, pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 1983, and Title VII of the Civil Rights Act of 1964. (ECF No. 4). Presently, before the Court, is Human Services Center's Motion to Dismiss Ms. Veverka's Amended Complaint. (ECF No. 6). The Motion to Dismiss has been fully briefed and is now ripe for decision.

For the reasons that follow, Human Services Center's Motion to Dismiss will be granted in part and denied in part. Human Services Center's Motion to Dismiss will be granted as to Ms. Veverka's Count I, ADA Failure to Accommodate claim, Count II, ADA Disability Discrimination claim, and Count V, Title VII Gender Discrimination claim. Human Services Center's Motion to Dismiss will be denied as to Ms. Veverka's Count III, ADA Retaliation claim and Count IV, § 1983 claims.

### I.    Statement of Facts

Ms. Veverka began working for Human Services Center as a Director of Assessment Services in February 2017. (ECF No. 4, at ⁋ 7). The Amended Complaint alleges that the Union President for the employee's AFSCME local unit (President) and another Human Services Center employee (Employee) illegally recorded Ms. Veverka to try to get Ms. Veverka fired.

1

(ECF No. 4, at ¶ 9).  Human Services Center ordered Ms. Veverka not to report the recording to the police.  (ECF No. 4, at ¶ 10).

On April 3, 2018, Ms. Veverka requested a formal meeting with Human Services Center's CEO and Clinical Director to discuss the recording.  (ECF No. 4, at ¶ 11).  On April 6, 2018, Human Services Center agreed to contact authorities to report only the Employee who recorded Ms. Veverka.  (ECF No. 4, at ¶ 12).  In addition, Human Services Center suspended said Employee with pay pending an investigation into the incident.  (ECF No. 4, at ¶ 14).  The Human Services Center's CEO and Clinical Director also ordered Ms. Veverka to file a police report referencing only the Employee.  (ECF No. 4, at ¶ 15).  Ms. Veverka was not permitted to file a report against the President because of the CEO's fear of "incurring her ire."  (ECF No. 4, at ¶ 15).  Ms. Veverka was not permitted to be involved in the police investigation without human resources or another Human Services Center administrator present and with her.  (ECF No. 4, at ¶ 15).

On April 26, 2018, Ms. Veverka found a threatening note in her mailbox at work that said "your [sic] done."  (ECF No. 4, at ¶ 16).  The note was written on Pittsburgh Steelers notepaper, which was the same kind of notepad that the Employee had on her desk.  (ECF No. 4, at ¶ 17).  Ms. Veverka reported this incident to her supervisor and the Human Resources Office.  (ECF No. 4, at ¶ 18).  On May 3, 2018, after a month-long paid suspension, the Employee returned to work, subject to a number of conditions.  (ECF No. 4, at ¶ 19).

On May 10, 2018, Ms. Veverka met with Board President, Paul Lynch, to discuss the recording and the note found in her work mailbox.  (ECF No. 4, at ¶ 20).  Ms. Veverka also informed Mr. Lynch about the mishandling and hiding of agency funds from board members and provided Mr. Lynch with email proof.  (ECF No. 4, at ¶ 21).  During this meeting, Mr. Lynch

assured Ms. Veverka that she would not be retaliated against for making such reports to the Board and that he would investigate the matter further.  (ECF No. 4, at ¶ 22).

On May 20, 2018, someone left a note in Ms. Veverka's door with the word "bitch" written on it.  (ECF No. 4, at ¶ 23).  Ms. Veverka also reported this note to her supervisor and the Human Resources Office.  (ECF No. 4, at ¶ 23).

On May 27, 2018, Ms. Veverka had an appointment with her primary care physician and a psychologist for symptoms of emotional distress.  (ECF No. 4, at ¶ 24).  Ms. Veverka's doctors diagnosed her with emotional distress and prescribed an anti-depressant.  (ECF No. 4, at ¶ 24). Ms. Veverka provided Human Services Center with a doctor's note regarding her diagnosis and prescription information.  (ECF No. 4, at ¶ 25).  The Amended Complaint alleges that Ms. Veverka was severely distressed with debilitating anxiety.  (ECF No. 4, at ¶ 26).  The Amended Complaint further alleges that Ms. Veverka's distress and anxiety substantially limits one or more major life activities and affects her ability to function in the workplace without an accommodation.  (ECF No. 4, at ¶ 26).  The Amended Complaint alleges that Ms. Veverka was experiencing the following symptoms: agitation, emotional dysregulation, irritability, quick temper, feelings of guilt without a clear cause, inordinate time spent worrying, crying, difficulty thinking or remembering, sleeping too much or too little, isolating from people and/or activities, unusual anger or irritability, fatigue, nausea, and difficulty completing daily tasks.  (ECF No. 4, at ¶¶ 24, 27).

On June 21, 2018, Ms. Veverka met with Mr. Lynch to determine an accommodation for her emotional distress and anxiety conditions.  (ECF No. 4, at ¶ 28).  At this meeting, Mr. Lynch confirmed that the Employee had engaged in criminal activity and that she would be terminated in due course.  (ECF No. 4, at ¶ 28).  At this meeting, Mr. Lynch also informed Ms. Veverka that

he had "scolded" the CEO for attempting to hide money from the Board, which was unacceptable.  (ECF No. 4, at ⁋ 29).  Ms. Veverka requested an accommodation that she would no longer need to supervise the Employee.  (ECF No. 4, at ⁋ 30).  Mr. Lynch told Ms. Veverka to try to relax and keep doing the good work that she had always done and that he would speak to the CEO about her requested accommodation.  (ECF No. 4, at ⁋ 31).

After this meeting with Mr. Lynch, Human Services Center's CEO immediately became remote and refused to speak with Ms. Veverka.  (ECF No. 4, at ⁋ 33).  Additionally, the Clinical Director became hyper-vigilant in scrutinizing Ms. Veverka's work.  (ECF No. 4, at ⁋ 33).  After this meeting with Mr. Lynch, the CEO directed a male employee to handle a client who was a personal friend of the CEO, even though it was Ms. Veverka's unit and her responsibility.  (ECF No. 4, at ⁋ 34).

On July 11, 2018, Ms. Veverka was terminated from her employment with Human Services Center.  (ECF No. 4, at ⁋ 36).  On July 11, 2018, Ms. Veverka again spoke with Mr. Lynch, and he stated that the termination had the appearance of relation and advised her to seek legal counsel.  (ECF No. 4, at ⁋ 37).

Ms. Veverka alleges that she has suffered severe financial loss and emotional distress due to her termination.  (ECF No. 4, at ⁋ 39).  Ms. Veverka further alleges that despite her diligent efforts to secure comparable employment, Ms. Veverka was substantially unemployed for nearly two years.  (ECF No. 4, at ⁋ 40).  Ms. Veverka further alleges that she has, and continues to suffer, pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.  (ECF No. 4, at ⁋⁋ 41-42).

## II.      Relevant Legal Standards

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure

12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light

most favorable to the plaintiff, and determine whether, under any reasonable reading of the

complaint, the plaintiff may be entitled to relief."  *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir.

2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)).  "To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a

claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Supreme Court clarified

that this plausibility standard should not be conflated with a higher probability standard.  *Iqbal*,

556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real*

*Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).  "Threadbare recitals of the elements

of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S.

at 678.  "Factual allegations of a complaint must be enough to raise a right to relief above the

speculative level."  *Twombly*, 550 U.S. at 555.

A pleading party need not establish the elements of a *prima facie* case at this stage; the

party must only "put forth allegations that 'raise a reasonable expectation that discovery will

reveal evidence of the necessary element[s].'"  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213

(3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa.

June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions

cast in the form of factual averments.  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997).  The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail, but rather whether he or she is entitled to offer evidence to establish the facts alleged in the complaint.  *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000).  The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding."  *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

In a civil rights case, when the court grants a motion to dismiss for a failure to state a claim, the court must offer the plaintiff leave to amend, even if it was not requested by the plaintiff, "unless doing so would be inequitable or futile."  *Phillips*, 515 F.3d at 246; *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007).  Further, amendment is inequitable where there is "undue delay, bad faith, dilatory motive, [or] unfair prejudice."  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).  Amendment is futile "where an amended complaint 'would fail to state a claim upon which relief could be granted.'"  *M.U. v. Downingtown High Sch. E.*, 103 F. Supp. 3d 612, 631 (E.D. Pa. 2015) (quoting *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010)).

## III.   Discussion

### A.  Count I – ADA Failure to Accommodate Claim

Human Services Center argues that Ms. Veverka has not brought forth sufficient factual allegations in support of her Failure to Accommodate claim.  (ECF No. 10, at 5-7).  Ms. Veverka argues that she pled sufficient facts in support of her Failure to Accommodate claim.  (ECF No. 8, at 8-10).

The ADA prohibits covered entities from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Such prohibited discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii). Once a qualified individual with a disability has requested an accommodation, the employer has a good faith duty to engage in the "interactive process" with the employee to determine whether the employee has a disability and whether a reasonable accommodation exists. *Williams v. Phil. Hous. Auth. Police Dep't*, 380 F.3d 751, 772 (3d Cir. 2004).

To support a claim for a failure to accommodate under the ADA, a plaintiff must establish: "(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated." *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017).

Turning to the first element of the prima facie case, a disability is defined under the ADA as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Under the ADA, a physical impairment is defined as "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1). The ADA

specifies that "major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "An individual is substantially limited in performing a major life activity if that individual is unable to pursue that major life activity in a comparable manner 'to most people in the general population.'" *Arrington v. Nat'l R.R. Passenger Corp.*, 721 F. App'x 151, 154 (3d Cir. 2018) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).

Ms. Veverka's Amended Complaint alleges that she requested accommodation for her emotional distress and anxiety conditions. In order to establish a Failure to Accommodate claim, Ms. Veverka must demonstrate that she is disabled and that her employer knew it. Ms. Veverka's emotional distress and anxiety conditions could be considered a mental impairment that impacts her ability to think, concentrate, remember, or complete daily tasks. In support of her disability, Ms. Veverka alleges that she experienced the following symptoms: agitation, emotional dysregulation, irritability, quick temper, feelings of guilt without a clear cause, inordinate time spent worrying, crying, difficulty thinking or remembering, sleeping too much or too little, isolating from people and/or activities, unusual anger or irritability, fatigue, nausea, and difficulty completing daily tasks. (ECF No. 4, at ¶¶ 24, 27). In addition, Ms. Veverka provided Human Services Center with a doctor's note with prescription information. (ECF No. 4, at ¶ 25). As such, and for the purposes of the present Motion to Dismiss, Ms. Veverka has pled sufficient facts to meet the first element of her Failure to Accommodate claim.

Turning to the second element of Ms. Veverka's Failure to Accommodate claim, Ms. Veverka's Amended Complaint must demonstrate that she requested an accommodation or assistance from Human Services Center. The Amended Complaint alleges that Ms. Veverka

obtained a doctor's note detailing her emotional distress and anxiety diagnoses and her prescription information.  The Amended Complaint further alleges that Mr. Veverka met with Board President Paul Lynch on June 21, 2018 to request an accommodation for her emotional distress and anxiety conditions.  As such, Ms. Veverka sufficiently pleads that she requested an accommodation to meet the second element of the *Capps* test.

Third, Ms. Veverka must plead that Human Services Center did not make a good faith effort to assist her emotional distress and anxiety conditions.  Ms. Veverka alleges that Mr. Lynch told her that he would speak to the CEO about providing an accommodation for her emotional distress and anxiety conditions.  At this stage, such allegation sufficiently satisfies the pleading standard for the third element of the *Capps* test.

Finally, Ms. Veverka's Amended Complaint must demonstrate that she could have been easily accommodated.  In their June 21, 2018 meeting, Mr. Lynch told Ms. Veverka that the Employee would be terminated in due course.  Ms. Veverka pleads no other information to show that Human Services Center could have easily accommodated her request to no longer supervise the Employee.  Furthermore, Ms. Veverka pleads that, three weeks after she made her accommodation request with Mr. Lynch, Ms. Veverka was fired.  Such allegations, without more, do not satisfy Ms. Veverka's pleading requirements to show that she could have been easily accommodated.  As Ms. Veverka did not plead sufficient facts concerning her Failure to Accommodate claim, Human Services Center's Motion to Dismiss will be granted.  As the Court cannot say that amendment would be inequitable or futile, Ms. Veverka will be granted leave to amend regarding her Count I, Failure to Accommodate claim.

### B.  Count II - ADA Disability Discrimination Claim

Human Services Center argues that Ms. Veverka has not brought forth sufficient factual allegations to show that she experienced disability discrimination.  (ECF No. 10, at 5).  Ms. Veverka argues that she pled sufficient facts in support of her Disability Discrimination claim. (ECF No. 8, at 10).

Under the ADA, "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  41 U.S.C. § 12112(a).  In order to establish a prima facie case of disability discrimination, a plaintiff must show that "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir. 1998).

Under the second element of the prima facie case, a "qualified individual" is a person who, "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  EEOC Regulations divide the "qualified individual" inquiry into two prongs.  *Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 145 (3d Cir. 1998).  "First, a court must determine whether the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position that such individual holds or desires." *Id.* (citing 29 C.F.R. § 1630, app. § 1630.2(m)).  "Second, it must determine whether the individual, with or without reasonable accommodation, can perform the essential functions of the position held or sought." *Id.* (citing 29 C.F.R. § 1630, app. § 1630.2(m)).

The Third Circuit Court of Appeals follows a two-step process to determine whether the individual can perform the essential functions of the job with or without a reasonable accommodation. *Id.* at 146. "First, a court must consider whether the individual can perform the essential functions of the job without accommodation. If so, the individual is qualified (and, *a fortiori*, is not entitled to accommodation)." *Id.* If the individual cannot perform the essential functions of the job without accommodation, "then the court must look to whether the individual can perform the essential functions of the job with a reasonable accommodation. If so, the individual is qualified. If not, the individual has failed to set out a necessary element of the *prima facie* case." *Id.*

A job's essential functions are defined by EEOC Regulations as those that are "fundamental" to the job rather than "marginal." *Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001) (citing 29 C.F.R. § 1630.2(n)(1)). Per the applicable Regulations, "a job function may be considered essential" for any of the following reasons:

    (i) The function may be essential because the reason the position exists is to perform that function;

    (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or

    (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

29 C.F.R. § 1630.2(n)(2). The Regulations also include a list of evidence that a Court may consider in determining whether a particular function is essential:

    (i) The employer's judgment as to which functions are essential;

    (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

    (iii) The amount of time spent on the job performing the function;

(iv) The consequences of not requiring the incumbent to perform the function;

(v) The terms of a collective bargaining agreement;

(vi) The work experience of past incumbents in the job; and/or

(vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3).  Whether a particular function of a job is essential is "a factual determination that must be made on a case by case basis." *Skerski*, 257 F.3d at 278 (quoting 29 C.F.R. § 1630, app. § 1630.2(n)).

A reasonable accommodation under the ADA includes: "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devises, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B).  EEOC Regulations define a reasonable accommodation as "modifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable a qualified individual with a disability to perform the essential functions of that position."  29 C.F.R. § 1630.2(o)(1)(ii).

As to the third element of a plaintiff's prima facie case, an adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Komis v. Sec'y of the U.S. Dep't of Labor*, 918 F.3d 289, 292 (3d Cir. 2019) (internal quotations omitted).  Adverse employment actions include acts related to the "hiring, advancement, or discharge of employees." 42 U.S.C. § 12112(a).

If the plaintiff establishes the prima facie case, "the burden of production then shifts to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse employment decision. *Olson v. GE Astrospace*, 101 F.3d 947, 951 (3d Cir. 1996) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Once the employer has done so, the burden then shifts back to the plaintiff, who "must show by a preponderance of the evidence that the employer's proffered explanation was pretextual." *Id.*

Under the first element of Ms. Veverka's prima facie case, Ms. Veverka must demonstrate that she is a disabled person within the meaning of the ADA. As discussed above, and for the purposes of the present Motion to Dismiss, Ms. Veverka has sufficiently pleaded that she had a disability and her employer knew it.

Under the second element of her prima facie case, Ms. Veverka's Amended Complaint must show that she is a qualified individual who can perform the essential functions of the job with or without a reasonable accommodation. Here, Ms. Veverka's Amended Complaint does not contain adequate information about her job duties and responsibilities as a Director of Assessment Services to survive the present Motion to Dismiss. Although Ms. Veverka's Amended Complaint alleges in a conclusory fashion that she could satisfy the job requirements with a reasonable accommodation, her Amended Complaint contains no allegations of the position that she held, the essential functions of her job, and whether she could perform such functions with or without a reasonable accommodation. As such, Ms. Veverka did not sufficiently plead facts surrounding the second element of her prima facie Disability Discrimination claim.

Finally, under the third element of the prima facie case, Ms. Veverka's Amended Complaint must show that she suffered an adverse employment action as a result of

discrimination for her emotional distress and anxiety conditions.  Ms. Veverka alleges that she requested accommodation for her emotional distress and anxiety conditions; however, as discussed above, she did not sufficiently plead facts surrounding her alleged accommodation request to support her claim for disability discrimination.  Ms. Veverka must set forth some factual detail beyond bare conclusory allegations to show how other employees were treated more favorably to survive the present Motion to Dismiss.  Ms. Veverka's Amended Complaint does not plead adequate information regarding the circumstances of her termination to meet the third element of her prima facie case with regard to her Disability Discrimination claim.  As Ms. Veverka did not plead sufficient facts concerning her Disability Discrimination claim, Human Services Center's Motion to Dismiss will be granted.  As the Court cannot say that amendment would be inequitable or futile, Ms. Veverka will granted leave to amend her Amended Complaint for her Count II, ADA Disability Discrimination claim.

### C.  Count III - ADA Retaliation Claim

Human Services Center argues that Ms. Veverka did not allege sufficient facts regarding her Count III, ADA Retaliation claim.  (ECF No. 10, at 9).  Ms. Veverka argues that she pled sufficient facts in support of her Count III, ADA Retaliation claim.  (ECF No. 8, at 11).

As to Ms. Veverka's ADA Retaliation claim, the ADA prohibits discrimination "against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a). The elements to prove an ADA retaliation claim are: (1) the plaintiff engaged in protected conduct; (2) the plaintiff suffered an adverse employment action by the defendant; and (3) there is a causal relationship between them.  *Williams*, 380 F.3d at 759.  Even where a plaintiff has not

pled sufficient facts to constitute a disability under the ADA, "the ADA retaliation provision protects 'any individual' who has opposed any act or practice made unlawful by the ADA or who has made a charge under the ADA." *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 502 (3d Cir. 1997).  Thus, "[a]n individual who is adjudged not to be a 'qualified individual with a disability' may still pursue a retaliation claim under the ADA." *Id.*

First, Ms. Veverka must prove she engaged in protected conduct under the ADA. Relevant here, an alleged request for an accommodation could qualify as protected conduct if the plaintiff had a reasonable, good faith belief that the requested accommodation was necessary and appropriate. *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003).  In this case, and as discussed above, Ms. Veverka alleges that she requested accommodation for her emotional distress and anxiety conditions.  At this stage, and for the purposes of the present Motion to Dismiss, Ms. Veverka satisfies the first element of her prima facia ADA Retaliation claim.

Second, Ms. Veverka must show that Human Services Center took adverse employment action against her.  Ms. Veverka claims that her July 11, 2018 termination occurred as a result of her engaging in the protected activity of requesting an accommodation.  Termination can constitute adverse employment consequences for the purposes of an ADA Retaliation claim.  As such, and for the purposes of the present Motion to Dismiss, Ms. Veverka sufficiently pleads the adverse employment action prong of her prima facie Retaliation claim.

Finally, Ms. Veverka must show that there is a causal link between her protected conduct and the alleged adverse employment actions taken against her.  To show the existence of a causal link, a plaintiff must plead facts showing "an unusually suggestive temporal proximity" or "a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W.*

*v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).  Ms. Veverka submitted a doctor's note to Human Services Center around May 27, 2018 describing her diagnosis and medication information.  On June 21, 2018, Ms. Veverka met with Mr. Lynch, where she asked for an accommodation request to no longer supervise the Employee.  Three weeks later, on July 11, 2018, Human Services Center terminated Ms. Veverka's employment.  The timing of Ms. Veverka's accommodation request and her subsequent termination suggest a causal connection sufficient to suggest a causal link between her protected conduct and the alleged adverse employment actions taken against her.  The Human Services Center's Motion to Dismiss will be denied as to Ms. Veverka's ADA Retaliation claim.

### D.  Count IV – § 1983 Discrimination by a State Actor

Human Services Center argues that it is neither a state actor nor did it act under the color of state law when it terminated Ms. Veverka's employment.  (ECF No. 10, at 11).  Ms. Veverka argues that Human Services Center is a state actor for the purposes of her § 1983 Discrimination claims as Human Services Center receives state and federal funding and runs the Lawrence County Community Mental Health Services.  (ECF No. 8, at 15).

Section 1983 provides that a state actor who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983.  A plaintiff bringing a claim under § 1983 therefore must allege that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the

wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988)
(internal quotations and citations omitted). The Third Circuit has outlined three broad tests for
determining whether state action exists: "(1) whether the private entity has exercised powers that
are traditionally the exclusive prerogative of the state; (2) whether the private party has acted
with the help of or in concert with state officials; and (3) whether the state has so far insinuated
itself into a position of interdependence with the acting party that it must be recognized as a joint
participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal
quotations and citations omitted). The first test is known as the "public function" test; the
second test is known as the "close nexus" test; and the third test is referred to as the "symbiotic
relationship" test. *Brown v. Phillip Morris, Inc.*, 250 F.3d 789, 801 (3d Cir. 2001).

"The requirements of the public function test are 'rigorous and rarely . . . satisfied.'"
*Schutt v. Melmark, Inc.*, 2017 WL 1477130, at *4 (E.D. Pa. Apr. 24, 2017) (quoting *Robert S. v.
Stetson Sch., Inc.*, 256 F.3d 159, 165 (3d Cir. 2001)). "It requires the court to determine whether
the defendant was performing a function that is 'traditionally and exclusively' the province of the
state." *Id.* at *4 (quoting *Leshko*, 423 F.3d at 343).

Under the "close nexus" test, the inquiry is whether "there is a sufficiently close nexus
between the state and the challenged action of the regulated entity so that the action of the latter
may be fairly treated as that of the State itself." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).
"Whether a [sufficiently] close nexus exists . . . depends on whether the State has exercised
coercive power or has provided such significant encouragement, either overt or covert, that the
choice must in law be deemed to be that of the State." *Am. Mfrs. Mut. Ins. Co.*, 526 U.S. at 52.

Finally, in determining whether a "symbiotic relationship" exists, the court must
determine whether "the government has insinuated itself into a position of interdependence with

the defendant." *Brown*, 250 F.3d at 803 (quoting *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 718 (1961).  "Extensive state funding is inadequate to establish a symbiotic relationship." *Blum*, 457 U.S. at 9.

It is the plaintiff's burden to establish the defendant is a "state actor" for the purposes of § 1983 claim.  *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).  To distinguish between a state and private actor, "[t]he principal question at stake is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotation marks and citations omitted).

Ms. Veverka alleges that Human Services Center "is a private, non-profit 501(c) Corporation, which receives a considerable amount of its funding stream from State and Federal resources, and is the administrative agency which runs the Lawrence County, PA Community Mental Health services, on behalf of said County, and therefore holds itself out as a de facto County Agency."  (ECF No. 4, ¶ 72).  Ms. Veverka further alleges that Human Services Center, "acting under color of law, and holding itself out as an appearance of persons having legal power to act, subjected the Plaintiff, who was exercising her constitutional and statutory rights, to discriminatory and illegal treatment, resulting in loss of employment and diverse damages." (ECF No. 4, ¶ 72).

As an initial matter, Human Services Center argues that Ms. Veverka did not adequately allege what protected activity or what statute governs her protected activity.  (ECF No. 10, at 11).  From the briefing, Ms. Veverka directs the Court to the allegations in her Amended Complaint that deal with her accommodation request and reporting alleged financial wrongdoing to the Board President.  Accordingly, the Court will consider Ms. Veverka's claims in relation to

18

such allegations as her protected activities.  Therefore, such protected activities were appropriately pled.

Thus, the Court must next determine whether Ms. Veverka's Amended Complaint adequately alleges that Human Services Center acted under the color of state law for the purposes of her § 1983 Discrimination claims.  While Human Services Center cited to the three *Kach v. Hose* tests in its brief, it failed to apply those tests to the allegations contained within Ms. Veverka's Amended Complaint.  Instead, Human Services Center asserts in a conclusory fashion that Ms. Veverka did not set forth adequate factual material to suggest that Human Services Center could be considered a state actor for the purposes of her § 1983 Discrimination claims.  Upon examination of the allegations contained within the Amended Complaint, the Court concludes that Ms. Veverka asserted adequate factual material within her Amended Complaint to suggest that Human Services Center did indeed act under the color of state law. Based on the allegations contained within the Amended Complaint, Ms. Veverka has adequately pled that Human Services Center satisfies the public function test.  Although Human Services Center is a private entity, the Amended Complaint alleges that the Human Services Center performs the duties of a county agency.  As such, at this stage of the case, Ms. Veverka adequately alleges that Human Services Center is a state actor for the purposes of the present Motion to Dismiss.  Thus, Human Services Center's Motion to Dismiss will be denied as to Ms. Veverka's § 1983 Discrimination claims.

### E.  Count V – Title VII Gender Discrimination

Human Services Center argues that Ms. Veverka did not allege sufficient facts regarding her Gender Discrimination claim.  (ECF No. 10, at 15).  Ms. Veverka argues that Human

Services Center treated a similarly situated male employee more favorably than she was treated. (ECF No. 8, at 16).

Title VII prohibits an employer from discriminating against its employees on the basis of sex. 42 U.S.C. § 2000e-2(a)(i). Gender discrimination claims are analyzed under the *McDonnell Douglas* burden-shifting framework. 411 U.S. 792 (1973). Initially, Ms. Veverka must establish a prima facie case of gender discrimination. A plaintiff can establish a prima facie gender discrimination case by showing: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) this occurred under circumstances that raise an inference of discriminatory action. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003).

If Ms. Veverka establishes a prima facie case for gender discrimination, the burden shifts to Human Services Center to articulate a legitimate, nondiscriminatory reason for why she received such treatment. *McDonnell*, 411 U.S. at 802. Ms. Veverka may then rebut Human Services Center's legitimate reason with sufficient evidence supporting that said reason is mere pretext for intentional discrimination. *McDonnell*, 411 U.S. at 802.

Under the *McDonnell Douglas* burden-shifting framework, Ms. Veverka must first satisfy her prima facie gender discrimination case. Human Services Center admits that Ms. Veverka's Amended Complaint alleges that she is a member of a protected class and that she suffered an adverse employment action. (ECF No. 10, at 15). However, Human Services Center argues that Ms. Veverka has not alleged that she is qualified for her position. (ECF No. 10, at 15). Ms. Veverka does not address whether she was qualified for her position as a Director of Assessment Services within her Response.

Ms. Veverka alleges within her Amended Complaint that she held her position as a Director of Assessment Services from February 2017 until she was terminated in July 2018.  At this stage, and for the purposes of the present Motion to Dismiss, Ms. Veverka adequately pleads that she is sufficiently qualified for her position as Director of Assessment Services.

Under the fourth element of the prima facie case, Ms. Veverka must demonstrate that her termination occurred under circumstances that raise an inference of discriminatory action. Human Services Center argues that Ms. Veverka pleads no facts sufficient to show direct evidence of disparate treatment and provides no appropriate comparators.  (ECF No. 10, at 15-16).  Ms. Veverka argues in response that Human Services Center's male CEO was treated more favorably for engaging in comparable activities.  (ECF No. 8, at 16-17).

"While 'similarly situated' does not mean identically situated, the plaintiff must nevertheless be similar in all relevant respects."  *Opsatnik v. Norfolk Southern Corp.*, 335 Fed. App'x 220, 223 (3d Cir. 2009) (citation and internal quotations omitted).  With regard to workplace discipline, the relevant factors to consider in determining whether individuals are "similarly situated" may include a "showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish the conduct or their employer's treatment of them."  *McCullers v. Napolitano*, 427 Fed. App'x 190, 195 (3d Cir. 2011).

Ms. Veverka alleges that the Human Services Center CEO, was merely scolded for his actions rather than fired in response to his attempts to hide "relevant, material financial information involving litigation from the Board."  (ECF No. 4, at ¶ 77).  Ms. Veverka's Amended Complaint provides no further information for how she was treated differently than a similarly situated male employee.  Ms. Veverka's Amended Complaint does not explain why the

Court should consider the male CEO to be a similarly situated employee to Ms. Veverka.  In addition, Ms. Veverka's Amended Complaint does not contain any allegations about how her actions and the male CEO's actions are appropriate comparator actions within a similarly situated analysis for her Gender Discrimination claim.  As such, Human Services Center's Motion to Dismiss Ms. Veverka's Title VII Gender Discrimination will be granted.  As the Court cannot say that amended would be inequitable or futile, Ms. Veverka will be granted leave to amend her Count V, Title VII Gender Discrimination claim.

### IV.    Conclusion

For the reasons stated above, Human Services Center's Motion to Dismiss will be granted in part and denied in part.  Human Services Center's Motion to Dismiss will be granted, with leave to amend, as to Ms. Veverka's Count I, ADA Failure to Accommodate claim, Count II, ADA Disability Discrimination claim, and Count V, Title VII Gender Discrimination claim. Human Services Center's Motion to Dismiss will be denied as to Ms. Veverka's Count III, ADA Retaliation claim, and Count IV, § 1983 Discrimination claims.

Ms. Veverka may file a Second Amended Complaint with regard to her Count I, ADA Failure to Accommodate claim, Count II, ADA Disability Discrimination claim, and Count V, Title VII Gender Discrimination claim by March 28, 2023.  If Ms. Veverka files a Second Amended Complaint, Human Services Center shall file its responsive pleading within 14 days of Ms. Veverka's filing of a Second Amended Complaint.  If no Second Amended Complaint is filed, Human Services Center shall file its Answer by April 11, 2023.  An appropriate Order will

be entered.


DATE: 3/14/2023

Marilyn J. Horan
United States District Judge